**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WENDY L. TALLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-04-984-L |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Wendy Talley, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Ms. Talley's application for disability insurance benefits and supplemental security income benefits. United States District Judge Tim Leonard has referred this matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.    The Administrative Decision**

At the time of the Commissioner's decision, Ms. Talley was 42 years old. She alleged disability due to double vision and lack of strength from anemia.

The Administrative Law Judge (ALJ) issued his decision on March 15, 2004, and found Ms. Talley not disabled. AR 16-21. Following the five-step sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), the ALJ found at step one that Ms. Talley had not engaged in substantial gainful activity since her alleged disability onset date of June 5, 2002. AR 17, 20. At step two, the ALJ determined that Ms. Talley's anemia is a medically determinable impairment that imposes significant limitations on her ability to engage in basic work activities and is, therefore, a "severe" impairment within the meaning of the Social Security regulations. AR 17-18, 20. The ALJ also determined that no medical evidence supports Ms. Talley's alleged double vision and, therefore, did not consider that impairment in his remaining analysis. AR 17. At step three, the ALJ determined Ms. Talley's severe impairment does not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18, 21.

The ALJ next determined that Ms. Talley has the residual functional capacity to perform sedentary work. AR 19, 21. Based on this residual functional capacity, the ALJ determined at step four of the sequential evaluation process that Ms. Talley could return to her past relevant work as a dispatcher. AR 19, 21. Alternatively, the ALJ determined at step five of the sequential evaluation process that Ms. Talley could perform other sedentary jobs and that such jobs exist in significant numbers both in Oklahoma and in the national economy. AR 20, 21. Therefore, the ALJ determined Ms. Talley was not disabled.

Ms. Talley appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied Ms. Talley's request for review, AR 4-7, making the ALJ's decision the final decision of the Commissioner.

## II.  Issues Presented for Judicial Review

Ms. Talley challenges the ALJ's decision that she is not disabled on the following grounds: (1) the ALJ erred as a matter of law by failing to fully develop the record as to material issues; (2) the ALJ erred as a matter of law by substituting his own medical opinion for the opinion of experts; and (3) the ALJ's credibility analysis is contrary to the law and is not otherwise supported by substantial evidence.

## III.  Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in

weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.    Analysis**

In her first claim, Ms. Talley contends the ALJ failed in his duty to fully and fairly develop the record. She contends that additional testing recommended by Dr. Reddy, a consultative examiner, was not obtained and that this testing "would have been 'necessary or helpful to resolve the issue of impairment.'" *See* Plaintiff's Opening Brief at 7 *quoting Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

"Although a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-480 (10th Cir. 1993) (citations omitted). This duty is especially strong in the case of an unrepresented claimant. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).[1]

---

[1] At the hearing before the ALJ, a non-attorney representative appeared on behalf of Ms. Talley. Under the circumstances of this case, this fact does not change the analysis regarding the ALJ's duty to develop the record. As Ms. Talley sets forth in her brief, the non-attorney representative made numerous disclosures to the ALJ during the course of the hearing as to her position that the additional testing recommended by Dr. Reddy was necessary to the disability determination. AR 162, 180, 181. *See Hawkins*, 113 F.3d at 1167-1168 (discussing that ALJ may ordinarily require counsel to identify the issue or issues requiring further development). This is not a case, therefore, where the claimant's claims were not adequately explored before the ALJ.

Proper consideration of this claim requires an initial discussion of the limited medical record presented in this case.[2] On October 1, 2002, Scott Schwerdtfeger, PA-C, examined Ms. Talley and listed as his clinical impression "hemolytic anemia" and possible "hereditary ellipitocytosis." AR 111-112; *see also* AR 119. He saw Ms. Talley again on October 25, 2002 and requested a hematology consult for Ms. Talley. His clinical impression was "weakness, arms." In a section of his report headed "consults/referrals" he recommended that Ms. Talley see a neurologist and further notes: "wonder about possibility of auto immune problem" and "MS." AR 108-109.

That same month, Ms. Talley was seen by Dr. Ganick for evaluation of anemia and "constitutional fatigue." AR 99-101. Dr. Ganick's impression was "hypochromic microcytic anemia, compatible with stage II iron deficiency" and "nonfocal weakness" secondary to the anemia. AR 100. Dr. Ganick states that Ms. Talley "has symptomatic iron deficiency in terms of fatigue and leg weakness, and she would likely have absent iron stores in the bone marrow. Serologic studies are to be obtained." AR 101. Dr Ganick noted Ms. Talley's history of intolerance to oral iron and that she "may require parenteral iron replacement for correction of the hemoglobin." AR 101. Following lab work, Ms. Talley was prescribed Chromagen, an iron supplement. AR 110.

With respect to Ms. Talley's back, Dr. Gannick noted Ms. Talley's degenerative disc disease and history of spondylosis, L3 and L4. AR 101.

---

[2]Ms. Talley apparently could not afford medical care, and this may explain the limited nature of the medical record presented. AR 170-171.

One month later in November 2002, Scott Schwerdtfeger, PA-C, again diagnosed Ms. Talley with anemia and weakness in the arms, noted her prognosis as "good" and recommended a "neurological workup." AR 106. With respect to Ms. Talley's functional limitations he noted: "unknown on weakness in arms until neuro[logical] evaluation is done. Anemia has no limitations." AR 106.

Several months later in June 2003, laboratory test results revealed Ms. Talley's blood was abnormal in a number of respects. For example, as the ALJ noted, her iron saturation was at a low 3.6. AR 142-143.

In August 2003, Ms. Talley was examined by Dr. Burk.[3] His assessment was history of anemia, general weakness -- subjective, and dysthymia.[4] He notes the need for lab work and also the possible need for an antidepressant. AR 139.

A few months later in October 2003, Dr. Adhikari Reddy, a consulting neurologist, examined Ms. Talley. Dr. Reddy's report states:

1. The patient complains of weakness of arms and shoulders, which can be seen in myopathy. The patient needs work up including blood test and EMG and nerve conduction.

2. She says she has low back pain, which is chronic in nature. She may need further work including x-ray and MRI scan.

---

[3]There is no mention of Dr. Burk's examination of Ms. Talley in the ALJ's decision.

[4]Dysthymia is defined as: "A chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." *Stedman's Medical Dictionary* 556 (27th ed. 2000).

> Neurologically the examination reveals diffuse weakness of both upper and lower extremities, which I feel, could be related to insufficient effort. The patient's weakness could also be due to some general medical cause. However, a muscle disease like myopathy has to be excluded.

AR 135.

The ALJ misstated the record in discussing Dr. Reddy's opinion. The ALJ found: "Dr. Adhikari Reddy discounted that any muscle disease such as myopathy was involved." AR 19. To the contrary, Dr. Reddy's report clearly reflects his opinion that Ms. Talley displayed symptoms that are like those seen in myopathy and that further tests, including a blood test, EMG and nerve conduction study, were needed.[5] Dr. Reddy also indicated that further workup was needed to assess Ms. Talley's back pain, including an x-ray and MRI scan.

Dr. Reddy completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). AR 130-133. Dr. Reddy opines that Ms. Talley can occasionally lift less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, sit less than 2 hours and is limited in both upper and lower extremities in her ability to push and/or pull. AR 130-131.

The ALJ rejected Dr. Reddy's opinion that Ms. Talley can perform less than sedentary work, stating that the opinion "is not based on objective examination findings" but instead appears "almost entirely derivative of the claimant's subjective remarks." AR 19. The ALJ

---

[5]The Court finds untenable the fact that the Commissioner has wholly failed to acknowledge or address this misstatement by the ALJ. It serves as the primary error upon which Ms. Talley bases each of her three claims.

does not explain why he did not order the additional testing recommended by the consulting examiner. Of course, had the additional testing for muscle weakness and back pain been performed as recommended by Dr. Reddy, objective medical evidence may have supported Dr. Reddy's opinion as to Ms. Talley's exertional limitations.[6]

"[W]here the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1165 (10th Cir. 1997) (internal citation omitted). "Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary." *Id.*[7]

In this case, Ms. Talley has been diagnosed with anemia, but any additional cause for her muscle weakness, extreme fatigue and back problems has not been determined. The medical record contains references to possible auto immune disease, multiple sclerosis and myopathy.[8] "[T]he ALJ should order a consultative exam when evidence in the record

---

[6] The only other assessment of Ms. Talley's exertional limitations is a Residual Functional Capacity Assessment dated April 25, 2003. That assessment, prepared by an agency consultant after a review of the medical records, indicates that Ms. Talley can occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and that pushing and pulling is unlimited. AR 123. The ALJ's rejection of this assessment is implicit in his determination that Ms. Talley is limited to performing sedentary work.

[7] The regulations define a "consulting examination" as "a physical or mental examination or test purchased for a claimant at SSA's request and expense." 20 C.F.R. §§ 404.1519 and 416.919.

[8] The record also contains a reference to dysthymia but Ms. Talley does not raise any issue of mental impairment in her claim that the ALJ failed to fully develop the record. Although depression is not listed as one of Ms. Talley's impairments, she testified before the ALJ that her son's counselor had noticed she was depressed. Ms. Talley further testified that she uses the first
(continued...)

establishes the reasonable possibility of the existence of a disability and the result of a consultative exam [including additional tests] could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. In the circumstances of this case, it was legal error not to order the additional tests recommended by the consulting examiner, Dr. Reddy, that he deemed would be of assistance in resolving the issues raised by Ms. Talley's claims of disability. *See* 20 C.F.R. § 404.1519a(a)(2) ("We will . . . use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for a decision.").

In her second and related claim of error, Ms. Talley contends that by rejecting Dr. Reddy's opinion, the ALJ substituted his own medical opinion for the opinion of the experts. As set forth in relation to Ms. Talley's first claim, the ALJ misstated a material portion of Dr. Reddy's report. On remand, after obtaining the additional testing necessary for full development of the record, the ALJ must consider Dr. Reddy's opinion and address the opinion in his decision. *See* 20 C.F.R. §§ 404.1527 and 416.927; *see also* Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *6. The Court expresses no opinion as to the weight the ALJ must ultimately give the consulting examiner's opinion.

---

[8](...continued)
ten minutes of her son's counseling session and that his counselor "helps me out a little bit." AR 172. *Compare Carter v. Chater*, 73 F.3d 1019, (10th Cir. 1996) (existence of doctor's diagnosis of depression required ALJ to further develop the record even though claimant's application did not mention depression).

In her third and final claim of error, Ms. Talley contends the ALJ erred in his credibility analysis because his findings are based upon a misunderstanding and misstatement of Dr. Reddy's opinion. In addition, Ms. Talley contends the ALJ engaged in speculation by suggesting that she had not been compliant in taking iron supplements. *See* AR 19 ("Ms. Talley's continued weakness and fatigue after months of presumably taking iron supplements raises questions of her compliance.").[9] As discussed, upon remand and after further development of the record, the ALJ must consider and address Dr. Reddy's opinion. The ALJ's credibility findings should reflect that proper consideration has been given to both the objective and subjective evidence of record. *See Luna v. Bowen*, 834 F.2d 161, 162 and n.2 (10th Cir. 1987). Ms. Talley's compliance with taking her iron supplements is but one factor that should be considered, *see Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991) (listing factors), and the ALJ should base all findings on the evidence of record rather than upon conjecture or speculation.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

---

[9]Dr. Reddy indicates that a medical condition separate from the anemia -- such as myopathy -- may be causing Ms. Talley's muscle weakness and fatigue. If further testing were to confirm the existence of some other medical condition, that could certainly explain why her weakness and fatigue continued even after "months of presumably taking iron supplements."

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by September  15th , 2005. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  26th  day of August, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE